HENRY C. WALN, PLAINTIFF IN ERROR, v. GEORGE WALN,. DEFENDANT IN ERROR.

$$\boxed{\begin{matrix} 53 & 429 \\ s58 & 641 \end{matrix}}$$

1. A release, executed in Pennsylvania, with a scroll in place of a seal, will be regarded as a simple contract in this state, the law of the former state not being shown.

2. When forgery or fraud in the execution of a sealed instrument is the issue, the consideration of such instrument can be inquired into in a court of law.

3. The statute (*Rev.*, *p.* 387, *pl.* 52), opening to contest the consideration. of certain sealed instruments, does not apply to a release.

On error to the Supreme Court.

For the plaintiff in error, *Gilbert & Atkinson* and *George M. Robeson*

For the defendant in error, *E. W. Arrowsmith* and *Frank P. McDermott.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This was a suit on a promissory note made by the defendant, George Waln, payable to one Sarah W. Hendrickson, who, many years after its maturity, had assigned it to the plaintiff. The sole defence interposed was, that the payee of the note, Mrs. Hendrickson, whilst she held it, had released the debt by a formal instrument under her hand and seal.

The reply on the side of the plaintiff to this attempted bar was, that the so-called release was not the deed of Mrs. Hendrickson, and that lady, as a witness, testified that the signature to the instrument, as she believed, had not been made by her, or by her authority, and that, if it were in her handwriting, it had been obtained from her by some fraudulent contrivance.

It will be, therefore, noted that the issue was, whether the writing in question was genuine.

In support of his contention the defendant himself was a witness, and having testified to the due execution of the release, was asked, on cross-examination, whether he had paid the money which in the instrument purported to have been paid. The counsel of the defendant thereupon objected to the inquiry, on the ground that the consideration of the instrument could not be inquired into, and the judicial reply was as stated on the record; " the court rules that the paper writing, which has been proved by the subscribing witness, is a release under seal, hence the question as to the consideration is overruled."

To this decision exception was taken, and its correctness in point of law is to be considered and decided by this court.

We think this ruling of the trial judge was erroneous on two grounds.

It will be observed that its basis was that the paper in question was a release under seal.

The record states that the " said instrument or release had a scroll, and not a seal of wax or wafer."

Such an instrument, of course, was not a sealed one, according to the principles of the common law, and it is obvious that the conclusion of the judge, that the release was under seal, was by reason of the construction put by him upon the act entitled "An act concerning sealed instruments." *Rev.*, *p.* 387, *pl.* 52. These are the words of the enactment: " That in every action upon a sealed instrument, or where a set off is founded upon a sealed instrument, the seal thereof shall be only presumptive evidence of a sufficient consideration, which may be rebutted as if such instrument was not sealed, and that all instruments executed with a scroll, or other devise by way of a scroll, shall be deemed a sealed instrument."

The Supreme Court, in *Bradden* v. *Ward*, 13 *Vroom* 518, in construing this statute, concluded that its first clause did not embrace a release, so that such an instrument still subsists as it did at common law. The provision is a transcript of a section in a New York statute, and the courts of that state

have expounded it in the same sense. Nor do we think that the subject is open to serious debate. The statutory language is perfectly plain, explicit and unambiguous ; it declares, with the utmost perspicuity, that in two cases, which it specifies, that when the action or the set off is founded on the sealed instrument, its consideration may be rebutted. How, then, is it possible for a court to extend the operation of the act beyond the limits thus unmistakably demarked ? To do so would not be an act of judicature, but of legislation.

In the brief of counsel, this construction of the statute in the case just cited is challenged, and it is insisted that the consideration of a release is disputable, the argument being, in the language of counsel, that it is quite anomalous for legislation " to submit to inquiry the consideration of a sealed instrument on which an action was brought, and to exclude from inquiry, under like conditions, the consideration of the sealed instrument, which was presented to extinguish it."

Even if it were admitted that this criticism is well founded, nevertheless it is not perceived how it is to avail, as there is no legal prohibition against the legislature creating such an anomaly if it sees fit so to do. Such considerations are effectual only in those cases in which the legislative purpose has been obscurely expressed ; if the lawmakers have ordained an absurdity, the judiciary has not the power to refuse to carry it into effect. By these remarks, however, it is not to be understood that this disparagement of this provision, read in its literal sense, is concurred in ; in my opinion, there are reasons of considerable cogency why the consideration of specialties constituting causes of action should be open to rebuttal, which do not exist in favor of a like right with respect to instruments to debar or release them. But it would be out of place to discuss the subject, inasmuch as the legislative purpose thus plainly manifested cannot, in the least degree, be affected by the result of such an inquiry.

In this particular, the act in question did not affect the release that was introduced by the defendant in this case.

And, similarly, when this section of this act, in its latter clause, declares "that all instruments executed with a scroll, or other device by way of a scroll, shall be deemed a sealed instrument," we are of opinion that its operation is universal, and that neither the context of the act, nor any reason inherent in the object of the legislation, subjects it to any limitation whatever, and that therefore a release executed with a scroll, when operated on by this provision, would be a specialty, and, of necessity, would have to be dealt with, in all respects, as such.

Nevertheless, in our opinion, the release relied on in the instance before us was a mere simple contract, and was not a deed. The instrument was executed with a scroll, in lieu of a technical seal; and such a formality would have constituted it a specialty, if the transaction had taken place within this state. But, in point of fact, this instrument had its origin not here at home, but in the commonwealth of Pennsylvania, a circumstance that appears to have escaped observation. There is no dispute upon the subject, for both the defendant himself and his subscribing witness testify to the execution of the release in the city of Philadelphia.

The result of this situation is, plainly, that, at the place of its creation, this instrument, tested by the evidence in the case, was not a specialty, but was merely a simple contract. There was no offer made at the trial to show what the law of Pennsylvania was, and, consequently, according to the general rule of law, and which rule has been repeatedly recognized and applied by our own courts, the inference, *juris et de jure*, is that the system there prevalent was that of the common law. Undeniably, therefore, when it appeared that the release in question had affixed to it a scroll in place of a seal, and had been executed in the city just mentioned, such an instrument, not being a specialty, was void if it was destitute of a legal consideration. And that was what the plaintiff in this case sought to prove—that the instrument, at the time of its creation, was without legal vitality. And it seems to this court that he had the right to do this. For it is not supposed that

any person will contend that the statute of this state, establishing scrolls as equipollent with seals, has any exterritorial force, or that it has the efficacy of converting an instrument nugatory at the place of its origin into one of a binding obligation, when brought for the uses of a trust, within the territory of this state. It is not perceived that there is any ground for maintaining that any contract, void or voidable, according to the *lex loci contractus,* becomes valid and incontestable by its importation into another jurisdiction. We think, therefore, that the defence in this case had the right to investigate the truth of the statement of this release with respect to its consideration.

But it is proper, and it may be important, as the case is to be tried again, to say that even on the assumption that the instrument in question was, in point of law, a specialty, the testimony offered touching its consideration should not have been rejected. It is certainly true that, in a court of law, when unassisted by a statute, neither the existence nor the *bona fides* of the consideration of a specialty can be drawn in question for the purpose of defeating the instrument on that ground; but we also think that when the issue is as to the fact of the execution of the instrument, as, for example, whether the name of the alleged maker of it is forged, or that it was fraudulently obtained by a substitution of papers or otherwise, that in such an inquiry the absence or the character of the asserted consideration may be shown as an important part of the inquiry. The rule is, that the want of consideration cannot be shown for the purpose of destroying the legal effect of the specialty, but that it can be shown to prove that it has no legal existence. In such inquiries, the non-existence of a consideration has always, in every trial of the subject, been considered as a factor of prime importance.

In the case of *Den* v. *Shotwell,* 3 *Zab.* 471, Chief Justice Green, after stating the principle that evidence is not admissible to show the consideration is essentially different from that recited in the deed, in order to defeat the effect and operation of the conveyance itself, says: "But this rule has never

been extended to prevent a party from showing that the deed is void for fraud or illegality." See also *Lessee of Ridgeway* v. *Underwood,* 4 *Wash. C. C. R.* 129 ; 4 *Id.* 189 ; *Garretson* v. *Kane,* 3 *Dutcher* 209.

It is not necessary to discuss the other exceptions. It would seem that most, if not all, the other testimony that was rejected should have been admitted.

Let judgment be reversed, and a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, SMITH, WHITAKER.   11.