Smith v. Wilson.

ANNA SMITH v. D. C. WILSON, Appellant.

Division Two, March 12, 1901.

1. **Specific Performance:** UNILATERAL CONTRACT: MUTUALITY. A unilateral contract for the purchase of land signed only by the party to be charged therewith, is enforcible in equity, under our statute of frauds. (R. S. 1899, sec. 3418).

2. ———: DESCRIPTION OF LAND: SUFFICIENCY. In a suit for specific performance of an agreement to sell land, the land need not be so fully and accurately described in the memorandum as to be capable of being identified from a mere reading of the paper. But it must afford the means whereby the identification may be made perfect and certain by parol evidence.

3. ———: ———: FIVE ACRES IN SOUTHWEST CORNER. Where the land was described in a memorandum as "five acres inside the fence in the southwest corner" of a certain quarter section, the description was sufficient to authorize a judgment for specific performance.

4. ———: ———: ———: PAROL EVIDENCE. Besides, such description certainly affords the means by which the identification of the land could be made certain and perfect by parol evidence.

5. ———: ———: MADE PERFECT BY PLEADING. The identity of the land may be furnished by the landowner's answering that through mistake and fraud he had been induced to sign the contract of purchase, by which he bound himself to sell five acres in the southwest corner of a quarter section, whereas he really intended it to be five acres twenty rods in front by forty rods deep, and asking that the description be reformed in accordance with his intention.

6. **Evidence:** AGENCY: HUSBAND FOR WIFE. A husband is a competent witness, under the Revised Statutes of 1889, to prove his own agency for his wife.

Appeal from Linn Circuit Court.—*Hon. W. W. Rucker,*
Judge.

AFFIRMED.

*A. W. Mullins* and *O. F. Libby* for appellant.

(1) In order to entitle a party to specific performance, the contract must be a certain, mutual one, capable of being enforced against either one of the parties. There being no

means of enforcing the contract sued on against the plaintiff, it lacked mutuality, and as there was no equity in the bill, it should have been dismissed. Glass v. Rowe, 103 Mo. 513; Waterman, Specific Performance, sec. 196; Berry v. Hantzell, 91 Mo. 132; Mastin v. Halley, 61 Mo. 200; 1 Story, Eq. Jur., secs. 723, 736, 751; Clampet v. Bells, 39 N. W. 495. (2) The description of the land in the paper writing filed, and also in the decree, is vague, uncertain and insufficient. Taylor v. Williams, 45 Mo. 84. (3) This being an equity case, the evidence and finding of the trial court will be reviewed. Lapham v. Dreisvogt, 36 Mo. App. 281. (4) The testimony of E. T. Smith was incompetent for any purpose, he being the husband of the plaintiff. There is no where in the record any evidence showing that the plaintiff ever knew of this transaction or authorized any one to act for her as her agent, and such agency, if any, must be shown by competent evidence other than that of the husband himself. Williams v. Williams, 67 Mo. 661; Wheeler & Wilson v. Tinsley, 75 Mo. 458; 1 Greenleaf, Evidence, secs. 334, 337; Boyse v. Railroad, 65 Mo. App. 468.

*C. C. Bigger* for respondent.

(1) The memorandum of the contract was signed by the defendant, the party sought to be charged, and is therefore sufficient. Browning v. Walburn, 45 Mo. 477; Ivory v. Murphy, 36 Mo. 542; Mastin v. Grimes, 88 Mo. 478; Cunningham v. Williams, 43 Mo. App. 629; Black v. Crowther, 74 Mo. App. 480. (2) The description of the land is sufficiently definite. Springer v. Kleinsorge, 83 Mo. 152; Sailor v. Gilfillan, 73 Mo. App. 152. And further, appellant will not now be heard to complain of the insufficient description of the land as set out in the contract, for, by his answer, he admits that by the written agreement he sold to respondent the land as claimed in her petition, but says it was by mistake and

through fraud, and asks to have the description changed as prayed for in his said answer. (3) While this court will, in equity cases, review the evidence and finding of the trial court, yet this court will defer largely to the finding of facts by the court below. Mathias v. O'Neill, 94 Mo. 523; McElroy v. Maxwell, 101 Mo. 295; Parker v. Roberts, 116 Mo. 657. E. T. Smith was competent to testify, as he was the agent of his wife. He was also a competent witness to prove his own agency. Leete v. State Bank, 115 Mo. 184.

BURGESS, J.—On the thirtieth day of December, 1897, plaintiff, through an agent, bought from defendant a tract of land containing five acres, of which he was the owner, at the price of five hundred dollars, and as part of the purchase money, paid him twenty dollars, at the same time defendant executing to her an instrument of writing in words and figures as follows:

"$20.00.                    Laclede, Mo., December 30, 1897.

"Received of Mrs. Anna Smith twenty dollars in part payment of the purchase money for 5 acres of land in the S. W. corner of the N. E. 1-4 Sec. 5-57-20, Linn Co., Mo., which I have to day sold to her for $500; deed to be delivered when balance of purchase money is paid, I to furnish abstract showing perfect title. Said 5 acres is inside the fence.

"D. C. Wilson."

Defendant refused to execute to plaintiff a deed as provided for in the foregoing instrument of writing, whereupon she tendered to him, on the fourth day of January, 1898, the balance of the purchase money, and demanded a deed to the land; and upon his refusal to comply with her request, she instituted this suit for the specific performance of the contract, alleging defendant's failure and refusal to comply with the terms thereof, and a readiness and willingness upon her part to do so.

Defendant answered the petition, admitting that he was at the date of the contract the owner of all of section five, township fifty-seven, range twenty, in Linn county, which lies north of the right of way of the Hannibal & St. Joseph Railroad Company, but denied every other allegation and averment in the petition.

The answer then proceeds as follows:

"Defendant further answering says that heretofore, to-wit, in the month of December, 1897, one May Jones, a real estate dealer in the city of Laclede, Missouri, came to defendant and desired to know whether he would sell five-acre tracts of land in the southwestern portion of above-mentioned tract of land; that after much talk and consideration defendant told Jones that he would sell off of said tract of land as many as three five-acre tracts commencing at the hedge fence on the south, at the west line of said quarter section aforesaid; each of said five-acre tracts to be measured off, commencing at the southwest corner of the hedge fence for the place of beginning, the first tract running thence east along the line of the south hedge fence forty rods, thence north twenty rods, thence west forty rods to the west line (or hedge fence) of said above tract of land, thence south down the line of the west hedge fence twenty rods to the place of beginning; the other two tracts to be in the same shape and of the same length and width, but lying to the north of the tract first described; all being in the northeast quarter of section five in township fifty-seven north, of range twenty west, Linn county, Missouri.

"Defendant further answering said that he informed the said Jones, aforesaid, that he would sell five acres in the southwest corner measured off and described as aforesaid, for the sum of five hundred dollars, provided always and upon the express condition and with the understanding, that if defendant could not procure a release of the trust deed on said tract of land from the holder of the same, then the land was not for sale.

"Defendant further answering says that afterwards, to-wit, on or about the thirtieth day of December, 1897, the said May Jones aforesaid, came to his house representing himself to be acting for and on behalf of the plaintiff herein, Anna Smith, and told defendant that he (Jones) was in a great hurry and wanted to close a sale of the five-acre tract of land in the southwest corner of defendant's farm in form and shape as they had heretofore agreed upon, to-wit, a strip of land twenty rods wide north and south, and forty rods long east and west, inside of the hedge fence and not otherwise; that he had twenty dollars to pay down, the balance to be paid in a short time or as soon as deeds could be made, provided that defendant could obtain a release of the mortgage or trust deed and furnish to plaintiff an abstract, and should defendant fail to obtain a release of the mortgage lien on said land then the trade and sale shall be cancelled without prejudice to either party. That acting in good faith, believing the land to be sold was the five acres above described, and in the manner and of the dimensions above, as herein set forth, defendant took and received of said Jones, acting for and on behalf of plaintiff, the sum of twenty dollars to be applied as part payment on the purchase of said five acres of land. That at the same time defendant received the twenty dollars from Jones he was requested by the said Jones to sign a receipt for said money so that, as he (Jones) said to defendant, he could show to plaintiff what he had done with the money.

"Defendant further says that he did not read the paper so presented to him by Jones, claiming the same to be a receipt only for the $20 so paid out, but that Jones read the same in a hurried manner and assured defendant that it was simply a receipt for $20 and nothing more; that they would have the land measured and deeds made describing the land as heretofore described.

"That defendant never offered to sell the land and no talk was had between plaintiff or her agent Jones about selling a tract of land as described in. plaintiff's petition.

"Defendant further says that he did not himself read the receipt he signed for the $20, but relied upon the representation so made by Jones, the plaintiff's agent in said transaction, that the land was not described therein.

"That such writing copied in plaintiff's petition does not contain a true and correct description of the tract of land sold to the plaintiff, and that said pretended receipt containing the description set forth in plaintiff's petition, was obtained by the false and fraudulent representations of plaintiff's agent in making such purchase, and for the purpose of gaining an advantage over defendant.

"Defendant further says that he is now ready and willing to comply with the terms of said contract of sale for the tract of land twenty rods wide and forty rods long in the southwest corner of his farm aforesaid, inside of the fences, and has been ready and willing on his part at all times since December 30, 1897; that he now tenders into court a deed conveying the title to the land in manner and form aforesaid upon plaintiff's paying the balance of the purchase money, $480.

"Defendant therefore prays the court to order and decree that the memorandum or receipt signed by defendant be reformed so as to conform to the agreement and sale made by defendant to plaintiff, and that plaintiff be required to pay into court at a day named the balance of the purchase money to-wit, four hundred and eighty dollars, for defendant, and that plaintiff accept the deed of conveyance tendered in open court, and that defendant have all other and proper relief in equity as well as costs laid out and expenses in their case."

Plaintiff replied to the answer denying all new matter contained therein.

At the time of the execution of the contract, and for some time prior thereto, defendant was the owner of and in the possession of the northeast quarter of section five in township fifty-seven of range twenty in Linn county, except a strip along the south side occupied by the right of way of the Hannibal & St. Joseph Railroad, and a public road. A hedge fence runs from east to west along the north line of said road, being the south boundary line of that part of said land owned and in the possession of defendant. Said land also adjoins the city of Laclede on the east, and Pleasant street, one of the streets of said city, runs from north to south along the west side of said land, a hedge fence being on the line between said street and defendant's land. Some time in the fall of 1897, defendant Wilson employed May Jones, a real estate agent of Laclede, to sell for him, a five or ten-acre tract, out of the west side of his said land. On December 30, 1897, Jones negotiated a sale of five acres in the southwest corner of the said land of defendant inside the fence to the plaintiff Mrs. Anna Smith, for the sum of $500, her husband, E. T. Smith, acting for her in making the trade. Smith paid to Jones $20 as part of the purchase money, and then the memorandum of the agreement, which forms the basis of this action, was prepared, and Jones took it to Wilson for his signature. The memorandum was twice read over to Wilson by Jones, and the trade was fully discussed, Wilson expressing himself entirely satisfied with the terms, except that he wanted the land measured from the southwest corner, which would include a part of the right of way of the Hannibal & St. Joseph Railroad and also the public road, instead of inside the fences. Jones informed Wilson that Mrs. Smith would not pay the $100 per acre for land which she would not get, and that if he insisted on the land being measured from the corner, instead of inside the fences, the trade would fall through. Wilson finally agreed to the terms of the

sale as made, took the memorandum of the agreement, read it over and signed it. The $20 were then paid over to Wilson and Jones took the memorandum back and delivered it to Mrs. Smith.

On the following day Wilson, Jones and E. T. Smith went to the land, as they all agree, to "step" it off, that is, to approximate how far north from the corner of the hedge fences at the southwest of the field they would have to go in order to get the five acres. Jones "stepped" the land off and when Wilson saw that the line would go farther north than he expected it would, he refused to carry out his part of the contract, and for the first time claimed that he had not agreed to sell in a square but in a plot, twenty rods east and west by forty rods north and south. Thereafter, within a few days, Mrs. Smith, through her husband, E. T. Smith, tendered to Wilson the balance of the purchase money, $480, and demanded a deed. Wilson refused to accept the money or make the deed, but offered to return the $20 that had been paid and to cancel all attempted sales, but this proposal was declined by plaintiff. Thereafter, this suit was instituted by her against defendant to compel specific performance of the contract.

The balance of the purchase money, $480, was tendered in court by the plaintiff and the defendant, having refused to accept the same, it was paid to the clerk. The court, after having heard the evidence, found for the plaintiff and rendered judgment as prayed in the petition.

In due time defendant filed his motions for new trial and in arrest which being of no avail he appeals.

As a general rule, courts will not enforce the specific performance of a contract when the obligations are not mutual, and capable of being enforced against either one of the parties (Glass v. Rowe, 103 Mo. 513; Waterman on Specific Performance, sec. 196), but an agreement, with respect to the sale of

Smith v. Wilson.

land, is an exception to that rule, and although unilateral or signed by one of the parties thereto, will be specifically enforced in equity, the statute only requiring that all such agreements upon which the action shall be bought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him lawfully authorized. [Sec. 3418, Revised Statutes 1899.]

Mastin v. Grimes, 88 Mo. 478, was a suit in equity for the specific performance of an agreement for the sale of land, in all material respects like the one involved in the case at bar, and SHERWOOD, J., in speaking for the court, said:

"The ruling of courts of equity in this respect constitutes an exception to the principle which requires mutuality in agreements which are to form bases for specific performance. At one time the correctness of this view of the subject was denied. [Lawrenson v. Butler, 1 Sch. & Lef. 13; Armiger v. Clarke, Bunb. 111.] Chancellor KENT seems by his intimations in the cases of Parkhurst v. Van Cortland, 1 Johns. Ch. 282; Benedict v. Lynch, Ib. 370, to have favored the ruling made by Lord REDESDALE in the case first cited, that both parties to the agreement must be bound, or else neither would be; but in a later case, Clason v. Bailey, 14 Johns. 484, having occasion to review his former opinion, Chancellor KENT found it to be erroneous and admitted that the point was too well settled the other way to be questioned. To the like effect are: Fry on Spec. Perf. secs. 295-346, and cases cited; Waterman on Spec. Perf. sec. 201, and cases cited; McCrea v. Purmort, 16 Wend. 460;; Hunter's case, 1 Edw. Ch. (N. Y.) 1; Davis v. Shields, 26 Wend. 341; Green v. Richards, 23 N. J. Eq. 32. There are some modern authorities to be found to the contrary of the position here announced; but the great current of authority flows in the direction above indicated.

The memorandum being signed by the party to be charged, and being sufficiently clear and certain, affords a competent basis for specific performance."

That case was followed and approved in the more recent case of Warren v. Castello, 109 Mo. 338, and must now be considered as the law of this State.

But it is said that the description of the land in the agreement is so vague and uncertain that the agreement is non-enforcible upon that ground also.

While there is much conflict among the authorities as to what is a sufficient description of property in a memorandum or contract of sale in order that it may be specifically enforced by the purchaser, the rule to be deduced therefrom is that "the land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper. But the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." [Black & Snyder v. Crowther & Andriano, 74 Mo. App. 480.] In the case at bar the land described in the agreement is: "Five acres of land in the S. W. corner of the N. E. 1-4 sec. 5-57-20, Linn Co., Mo., which I have to day sold to her for $500; deed to be delivered when balance of purchase money is paid, I to furnish abstract showing perfect title. Said 5 acres is inside the fence."

This description is we think of itself sufficiently specific and definite to identify the land from a mere reading of the paper, without more, for it clearly describes the land as five acres in the southwest corner of the northeast quarter of section five, township fifty-seven of range twenty in Linn county, inside the fence. No more specific description was necessary in order that any person familiar with the description and admeasurement of land might locate it. But even if the descrip-

tion given is not specific enough without more to justify a decree of specific performance, there can be no question but that it affords the means whereby its identification could be made perfect and certain by parol evidence.  Moreover, if any further description was necessary in the way of identifying the land it was furnished by defendant's answer in which he in effect alleged that through mistake and by deception and fraud, he was induced to sign the contract by which he was bound to sell five acres of land in the southwest corner of his farm inside the fence to the plaintiff for $500, when he really intended it to be five acres twenty by forty rods in said corner.

It is claimed that E. T. Smith was incompetent as a witness for any purpose, and especially for the purpose of showing that he was the agent of his wife, the plaintiff, and as such agent acted for her in the purchase of the land.  Williams v. Williams, 67 Mo. 661, and Wheeler & Wilson v. Tinsley, 75 Mo. 458, are relied upon as supporting this contention, but those cases were disapproved in the more recent case of Leete v. The State Bank of St. Louis, 115 Mo. 185, in which it is held that a husband, under Revised Statutes, 1889, section 8922, is a competent witness to prove his own agency for his wife.

The finding and decree of the trial court was well authorized by the evidence.  The judgment should be affirmed, and it is so ordered.

*Sherwood, P. J.* and *Gantt, J.,* concur.