Madonna LUSCO, Respondent,

v.

Tatos TAVITIAN, Appellant.

No. 45132.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

J. K. Owens, Kansas City, for appellant.

James Daleo, Julian M. Levitt, Kansas City, for respondent.

VAN OSDOL, Commissioner.

This is an action for specific performance of a contract for the purchase and sale of described real property in Kansas City. The trial court found for plaintiff, and entered a judgment and decree directing that defendant execute and deliver to plaintiff a warranty deed, and that plaintiff contemporaneously pay to defendant the amount of $20,000 and execute and deliver to defendant a note secured by a deed of trust for the remainder of the purchase price, all in compliance with an option to purchase executed by defendant and alleged and found to have been exercised by plaintiff. Defendant has appealed.

The option to purchase was contained in a lease whereby defendant, Tatos Tavitian, leased the described property to plaintiff, Madonna Lusco, for a term of five years beginning on the 1st day of June, 1951, and ending on the 31st day of May, 1956. The option to purchase was as follows,

"For and in consideration of the payment by lessee of the sum of One Thousand Dollars on or before June 1, 1951, and the payment of the sum of Two Hundred Fifty Dollars on or be-

fore June 1, 1952, and Two Hundred Fifty Dollars on or before June 1, 1953 and Two Hundred Fifty Dollars on or before June 1, 1954 and Two Hundred Fifty Dollars on or before June 1, 1955, the lessor does hereby grant to lessee an option to purchase said property on the 31st day of May, 1954 or any day thereafter but prior to the expiration of the five year lease ending May 31, 1956. Purchase by lessee to cancel future payments on option. The purchase price for said property to be in the sum of Sixty Thousand Dollars, which is to be paid as follows: Twenty Thousand Dollars down and the balance of Forty Thousand Dollars represented by buyers promissory note, secured by first deed of trust, bearing interest at the rate of 5% per annum and payable in monthly installments of $754.86 including interest, until the whole sum named is fully paid, with permission given to make two or more payments at any time."

The real property involved consists of described lots and building thereon situate on Holmes Street, and is used by plaintiff, lessee-optionee, in transacting her business denominated "The Majestic Bar." The business is under the management of plaintiff's husband, Tudie Lusco.

It is contended by defendant-appellant that plaintiff did not timely accept or exercise her privilege of purchase under the option, and so was not entitled to invoke the remedy of specific performance. Plaintiff-respondent contends that she exercised the option long prior to the time provided in the option by orally notifying defendant's agent of her acceptance; that the option to purchase or offer to sell did not expressly require payment of the purchase price as a part of or as a condition precedent to the exercise of the option, and the payment of the purchase price could have been made within a reasonable time after plaintiff had notified defendant's agent of plaintiff's election to purchase; or, in the alternative, plaintiff-respondent contends that if the payment or tender of the purchase price, or a part thereof, was by the terms of the option essential to the exercise of the privilege of purchase, defendant waived the time of payment, or was estopped to assert the essentiality of timely payment.

An option is unilateral and does not ripen into a contract of purchase and sale until exercised by the optionee. Until the optionee accepts there is no enforceable contract, the option being in effect but an offer on the part of the optionor, although an offer binding on the optionor by virtue of the consideration paid for the option until the time stipulated for the acceptance of the offer has expired. The optionee in exercising the option may or may not be required to pay the purchase price, or a part thereof, within the time, depending upon the terms of the option or offer. Ordinarily time is of the essence in the exercise of an option, and the requirement of the payment of the purchase price within the time stipulated for acceptance of the offer or exercise of the option is essential where the option by its terms makes such payment a part of or a condition precedent to the exercise thereof. The option by its terms may require a written notice of acceptance. If there be no stipulation as to the mode, manner or way the optionee should give notice of acceptance, any manifestation of the determination to accept will suffice, with resultant contract of purchase and sale (if the essential terms of such a contract, or method of determining them, are set forth in the written option or offer). Chapman v. Breeze, 355 Mo. 873, 198 S.W.2d 717; Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47; Lively v. Tabor, 341 Mo. 352, 107 S.W. 2d 62, 111 A.L.R. 976; Hollmann v. Conlon, 143 Mo. 369, 45 S.W. 275; James on Option Contracts, § 415, pp. 183–185.

If the manner of acceptance is not prescribed and if the acceptance be oral, there is initially upon such acceptance no mutuality of remedy. The optionor cannot enforce the contract should the optionee plead the Statute of Frauds, inasmuch as

the optionee had not signed any written agreement or memorandum charging him with an obligation to purchase. However, should the optionee institute an action for specific performance against the optionor who did sign the option, any requirement of mutuality of remedy is supplied. Ray v. Wooster, Mo.Sup., 270 S.W.2d 743; Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014; Smith v. Wilson, 160 Mo. 657, 61 S.W. 597; Ivory v. Murphy, 36 Mo. 534; James on Option Contracts, §§ 415–416, pp. 183–186; 49 Am.Jur., Specific Performance, § 36, pp. 50–51.

■■ Notwithstanding that time is of the essence, the optionor by his words, acts or conduct may waive the requirement of acceptance or exercise of the option within the time stipulated. Chapman v. Breeze; supra; Bammert v. Kenefick, Mo.Sup., 261 S.W. 78. In some circumstances the optionee's delay is excused. 81 C.J.S., Specific Performance, § 106 e., pp. 630–631; Lorillard v. Keyport Brick & Tile Manuf'g Co., 48 N.J.Eq. 295, 22 A. 203; Keyport Brick & Tile Mfg. Co. v. Lorrillard, N.J. Ch., 19 A. 381; and other cases collated in the Annotation 157 A.L.R. 1311, at pages 1313 et seq. It has been written that the optionor may not take advantage of the optionee's failure to exercise the option within the stipulated time if the optionor has caused the optionee to be misled as to his rights. James on Option Contracts, § 869, pp. 410–412. It is a general rule that an optionor may not do any act or omit any duty calculated to cause the optionee to delay in exercising his privilege of purchase. 55 Am. Jur., Vendor and Purchaser, § 40, pp. 509–511.

In considering this case, we shall assume that the option to purchase agreement contemplated the down payment or the tender of the down payment of $20,000 as of May 31, 1954, in order for plaintiff to exercise her privilege of purchase without making the "option payment" of $250 due on or before June 1, 1954. It also may be assumed that, the down payment of $20,000 having

been tendered or paid, the exchange of the warranty deed and the secured note between the respective parties, vendor and vendee, were mutual and reciprocal covenants to be performed within a reasonable time.

On June 2, 1954, all monthly rentals stipulated in the contract of lease and the stipulated annual amounts, consideration for the privilege of purchase, had been paid for the years 1951, 1952 and 1953; and all rent for the months of the year 1954 had been paid to and including the rent for the month of May. These payments had been made for plaintiff by plaintiff's husband to defendant's agent Cecil E. Williams.

Tudie Lusco, plaintiff's husband, testified that he had a conversation with defendant's agent Williams on December 2, 1953—"I told Mr. Williams that I was picking up the option next month." On January 4, 1954. "I says to him, 'Cece (defendant's agent Williams), I am going to give you a check for $20,000 right now, and we will have our lawyers get together and settle this up' So he says to me, 'Tudie, you can't do that.' I says, 'Why can't I give you the twenty thousand now?' And he says, 'Well, look at your lease.' I says, 'Cece, I don't think I have the lease here, I think Mr. Daleo has it.' He says, 'I will go up and get the lease and show you that you cannot buy the building until June, until after June.' So Cece goes up, * * * gets the lease, comes back and shows me that in the lease it says that I couldn't pick up the option until June."

Tudie Lusco testified that again on April 2, 1954, defendant's agent Williams came to the Majestic Bar to collect rent, whereupon the witness Tudie directed his nephew Vincent, an employee of the Majestic Bar, to "take Cece Williams down there, give him a check for $20,000 instead of the $700 (rent), see if he will take the $20,000 today." Vincent Lusco testified of the conversation of April 2d that defendant's agent Williams told the witness, "Don't make the check out for twenty. * * * I can't pick that up until after June." The witness

Vincent also testified that Tudie said to Williams, "I am buying the building. I will give you the money now for the building. I am buying it." Williams replied, "You can't buy it right now. * * * You can't buy it until after June."

Again on June 2, 1954, defendant's agent Williams came to the Majestic Bar and "I (Tudie) started to write a check for $700, and Cece reaches over and stopped me. He says, 'Tudie, make it for $950,' and I said, 'What for, Cece?' He says, 'To continue the option.' I says to him, 'Cece, you know I have already picked up that option. I will give you $20,000 now.' And he says, 'Tudie, you can't do that.' I says, 'Why can't I give you twenty thousand now? You know that I had picked up the option.' He says, 'You just can't do it.' So I must have shouted $20,000 four or five times from what I understand, and we walked over towards the end of the booths, and he tells me, he says, 'Tudie, you can't do that because you didn't notify me in writing.'"

Defendant's agent, Williams, testified that in the conversation of January 4th he told Tudie, "You can't buy it (the property) until June according to the lease and option." The witness Williams was positive that Tudie didn't offer a check for $20,000. "He (Tudie) may have said something about $20,000, but I don't recall it if he did."

Tudie also testified that Williams had said, after the controversy had arisen as to the exercise of the option, that the "old man (defendant) don't want to sell the building. * * * The old man don't want to pay the capital gains tax to the Government. * * * No, Tudie, he just don't want to sell the building." The agent Williams testified that defendant didn't want to sell the property "for several reasons."

In reviewing this case we have not found that the evidence is in great conflict as to the facts of plaintiff's manifestation of her intention to avail herself of the privilege of purchase under the option agreement. The testimony of plaintiff's husband Tudie and the nephew Vincent with respect to conver-

sations between Tudie and defendant's agent was in most material respects corroborated by other witnesses. And, wherein other oral evidence conflicts with the testimony of Tudie and his nephew Vincent, we here give due regard for the opportunity of the trial chancellor to judge the credibility of the witnesses.

■ There is a contention raised by defendant-appellant as to the extent of authority of the agent Williams to act for defendant with respect to the option. It is urged that any words, acts or conduct of Williams which might amount to waiver or estoppel were not binding upon defendant.

Plaintiff had been notified of the appointment of Williams as rental agent and that rents and "option payments" were to be made to Williams. The instrument of lease in fact had been prepared by Williams, who apparently retained the instrument in his custody. Except in one instance, all business matters relating to the property, the lease and option agreement were transacted by plaintiff's husband with Williams. And there was substantial evidence that plaintiff had further reason to believe the agent Williams had broad comprehensive powers in dealing with plaintiff in defendant's behalf. Plaintiff's husband, Tudie, testified that in 1952 when defendant was about to depart for Europe, defendant had personally directed and assured the witness Tudie that "everything has to go through Mr. Williams, what Mr. Williams says goes." See and compare Phipps v. Mallory Commission Co., 105 Mo.App. 67, 78 S.W. 1097. Defendant did not testify in refutation of the testimony of the witness Tudie in this connection. The contention is ruled adversely to defendant.

As we have indicated, the evidence tends to show that plaintiff through her husband thrice expressed her intention to exercise the option. She prematurely sought the consummation of the purchase, which purchase according to the terms of the option was not to be consummated prior to May 31, 1954. Our examination of the option

set out supra discloses that plaintiff had the privilege of purchase on May 31, 1954, "or any day thereafter" but prior to the expiration of the lease; but we have also noticed the option provision that only a purchase by plaintiff would have the effect of cancelling future payments on the option. Consequently, we assume, although we do not decide, that, unless plaintiff tendered or was excused from tendering the down payment of $20,000 on May 31st, the option lapsed for want of the payment of the sum, $250, due on or before June 1, 1954.

The evidence shows that plaintiff was at all times able to pay the $20,000 stipulated as the down payment on a purchase price, and was seeking to avail herself of the privilege of purchase at the earliest time, which time she was advised by defendant's agent was not until June. The agent Williams testified that he had believed plaintiff "couldn't buy" the property until June of 1954, even "though the lease says May the 31st."

As we have said, plaintiff prematurely sought the consummation of the purchase on January 4th and April 2d, whereupon defendant's agent Williams, having advised plaintiff that she could not complete the purchase at the stated times (January 4 and April 2, 1954), went further and advised plaintiff that she could not buy the property until June, although the optionee had the privilege of buying as early as May 31st without payment of the $250 due on or before June 1st.

We do not wish to say that this advice on the part of defendant's agent was made with the intention of misleading plaintiff; but, in fact, the agent's advice was misleading in effect. It would seem that because of the statement by defendant's agent that "you cannot buy the building until June, until after June" was due to the agent's mistaken belief that June was the earliest time plaintiff could avail herself of the privilege of and consummate the purchase, and it may be that in this situation both of the parties, plaintiff and defendant, became subject to the same mistake or misapprehension, but plaintiff's mistake was reasonably induced by the misstatements of defendant's agent. The mistake on the part of plaintiff and his delay in further seeking to consummate the purchase until June having been brought about by the misstatement of defendant's agent, we have the view in the circumstances of this case that equity requires the conclusion that plaintiff in June should have been accorded the privilege of purchase as of May 31st. Lorrillard. v. Keyport Brick & Tile Manuf'g Co., supra; 81 C.J.S., Specific Performance, supra. Apparently this was the view of the trial chancellor.

We have also noted that even when plaintiff's husband spoke of paying $20,000 on June 2d, defendant's agent did not raise the question of the medium or sufficiency or timeliness of the payment or tender, but refused to receive such payment "because you (Tudie) didn't notify me in writing." Other testimony tends to show that, since his execution of the contract of lease and the included option, defendant for several reasons had changed his mind and was no longer desirous of selling.

The judgment and decree should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.