CHAS. A. SCOTT, Respondent, v. ISAAC R. BROWN, Appellant.

Kansas City Court of Appeals, November 6, 1893.

1. **Account:** EVIDENCE. In an action on an account, if plaintiff's evidence only tends to prove three of several items on the debt side, which amount to less than the aggregate admitted credits on the credit side, the plaintiff cannot recover.

2. **Sales:** WAGER: CONTRACT: EVIDENCE. A sale of goods to be delivered in the future is valid; but if under the guise of such a contract, valid on its face, the real purpose is merely to speculate in the rise or fall of prices and the goods are not to be delivered, but the difference between the contract and the market price only paid, then the transaction is a wager and the contract is void; the evidence in this case is reviewed and the sale found to be a wagering contract.

*Appeal from the Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Virgil Conkling,* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained. There was no evidence whatever even tending to sustain the greater portion of the charges against the estate. Testimony was given only

upon three of the twelve grain charges. The credits upon plaintiff's account will be presumed to be just (except where denied) but the charges must be proven. This was not done, hence the judgment should have been for defendant. (2) The evidence was insufficient to support the judgment rendered. This we have shown above, but we now specially refer to the charge on account of the oats "deal." If this was a legitimate transaction—an actual sale, then it was to be followed by delivery in May, 1891. If not delivered at that time, then an action might lie against the estate for breach of contract. The only liability, if any, which attached against Trotter on account of this transaction, was the contracual duty of delivering the oats in May, 1891, at the price agreed upon in September, 1890. This contract was never changed in any way during that time. It is true that Trotter seems to have vested Scott with some powers in the matter as his agent, sending him word to take care of the trade, but certainly it must be conceded that the agency, if any existed, became terminated upon the death of Trotter, the principal. *McDonald v. Black,* 20 Ohio, 185; *Clayton v. Merrett,* 52 Miss. 353; *Rapp v. Ins. Co.,* 113 Ill. 390; *Krumdick v. White,* 92 Cal. 143; 28 Pac. 219; *Weber v. Bridgman,* 113 N. Y. 600; 21 N. E. 985.

*Hale & Son,* and *J. W. Sebree,* for respondent.

(1) Before a contract of sale or purchase of personal property can be brought within legal inhibition against "option dealing," it must appear by the evidence, that at the time of the sale or purchase, both principals to the contract must intend that no delivery in fact shall take place, and that both agreed at the time that the differences should be paid without delivery. It

is not sufficient that one only of the parties should intend that no delivery should be made, and that the differences should be settled without delivery. *Crawford v. Spencer*, 92 Mo. p. 498, and cases cited. This case fully covers all that can well be said on the subject of option deals, so-called. See also, *Teasdale v. McPike*, 25 Mo. App. 340; *Irwin v. Williar*, 110 U. S. 498. (2) The court will not upon mere suspicion hold that the transaction was such as is forbidden by law, but require the defendant to prove it as a defense. *Cockrell v. Thompson*, 85 Mo. 520.

GILL, J.—This action is based on an account for various alleged sales and purchases of grain made by plaintiff, Scott, in behalf of the deceased, Calvin W. Trotter. Scott, it seems, was engaged at Carrollton, Missouri, in negotiating "deals" of grain on the St. Louis market. His business was done by telegraph through a commission firm at St. Louis. According to the testimony adduced, Trotter, who lived at Carrollton, made several deals through Scott, and this suit is for an alleged balance of $474.31, on about a dozen different transactions. On the debit side of the account sued on appear charges for some eleven different purchases which plaintiff claims to have made for Trotter, while on the other side of the account Trotter is credited with several sales of grain made for him by the plaintiff.

At the close of the evidence the administrator interposed a demurrer, asking the court to declare as a matter of law that plaintiff was not entitled to recover. The court declined so to do, and proceeded to enter judgment for the plaintiff for $474.31, the balance claimed, and the administrator appealed.

After a careful reading of this record, we discover two valid objections to plaintiff's right to recover.

In the first place, waiving the character of these deals, and admitting them to be legitimate and not wagering transactions, the evidence fails to show that Trotter's estate was indebted to plaintiff for any balance of account. As to the several matters charged in the complaint—that is, on the debtor side—plaintiff introduced evidence tending to prove only *three*, which aggregated less than $10,000, while there stands admitted to the credit side of the account more than $40,000. With this showing, then, it is clear the Trotter estate owed plaintiff nothing. The proof would show an indebtedness the other way.

But more than this, it conclusively appears from the evidence that the "deals," on account of which plaintiff seeks to recover, were mere wager contracts, and such as the courts will not attempt to enforce.

The only transaction undertaken by Scott for Trotter during his, Trotter's, lifetime of which there was any evidence, was that of September 2, 1890. It was then that Scott contracted in the St. Louis market to sell for Trotter 10,000 bushels of oats at the price of thirty-six and one-fourth cents per bushel, and which were to be delivered in the following May. A few days thereafter Trotter was taken sick, and he died during the month of September, 1890. While Trotter was sick, however, plaintiff's evidence tends to prove that Trotter sent the plaintiff word to "take care of his trade during his sickness." Shortly after Trotter's death plaintiff applied to Brown, Trotter's administrator, for instructions as to what should be done with the alleged oats deal. The administrator refused to have anything to do with the matter, or in anyway to recognize the transaction. Subsequently, on October 20th, Scott, assuming to act without the consent of Trotter's personal representative, bought on the St. Louis market

10,000 bushels of oats at forty-five and one-half cents per bushel, and thereby, he says, settled the oats transaction at a loss of something over $700. And on the same day, October 20th, and, as already said, some time after Trotter's death, plaintiff, pretending still to act for the dead man, purchased in like manner, on the St. Louis market, 10,000 bushels of *corn*, to be delivered the following May. This corn transaction was soon thereafter closed, and with a profit, which plaintiff says he credited to Trotter's account.

The law, in dealings of this class, is thus expressed in what may be termed the leading case in this state: "'A sale of goods to be delivered in the future is valid; * * * but if, under the guise of such a contract, valid on its face, the real purpose and intention of the parties is merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but the difference between the contract and the market price only paid, then the transaction is a wager, and the contract is void." *Crawford v. Spencer*, 92 Mo. 498.

Now, don't the testimony here, in connection with the conduct of the parties, unquestionably show that the pretended sale of oats on September 2, to be delivered the following May, was intended by all concern( as a mere wager on prices—such a deal as could and was to be closed on settling the differences. The evidence is that such had been the uniform practice between these same parties in the course of numerous dealing: prior to that date. It was all the time well understo that no actual delivery of grain was intended, b. that the deals were to be closed in the settlement differences. If the contract in September was in good faith for delivery of oats in May, 1891, why did plaintiff, Scott, close out the transaction in October, 1890, seven months before the contract time for d 'v- ery? Why not wait till May and give Trotter's estate

a chance to comply with the alleged contract of sale? If the September contract for delivering oats in May following was what it purported to be, on what authority did Scott close it out in October? He testified that Trotter, during his illness in September, sent him word to *attend to his trade.* He seems to have construed this to mean to close it out in October and settle differences. If the oats deal was a legitimate transaction, then clearly Scott acted without authority in closing it out in October and submitting to a demand to pay the difference between the price of May oats then, and at the time the alleged contract was entered into.

The judgment was manifestly for the wrong party, and will be reversed. All concur.