A. C. YONTZ, Respondent, v. W. A. McVEAN, Appellant.

Kansas City Court of Appeals, January 5, 1920.

1. **SALES: Future Delivery: Intention.** There may be a valid contract for sale of corn for future delivery even though the vendor has no grain on hand. The thing which taints a sale for future acquisition and delivery is a lack of intention to procure and deliver within the time limited.

2. ——: **Options: Sale: Unaccepted Offer.** An option contract for sale of grain, is a privilege extended to one whereby he may buy, sometimes called an unaccepted offer, or right of election.

3. ——: **Statutes: Options: Intention.** The Statute of Missouri, section 4780, Revised Statutes 1909, does not prohibit all option contracts for grain (as in some States) but only such in which the parties have no intention to deliver, or to buy.

4. **CONTRACTS: Options: Intention to Deliver: Instructions.** In an option contract for the purchase of corn there must be an intention to deliver and to receive and to pay for it, if the option is exercised. The intention is a part of plaintiff's case which he should submit in his instructions. If he fails to do so it is an error which will not be cured by being submitted in instructions for the plaintiff. But as there is no dispute or controversy in the evidence as to that fact the omission is not reversible error.

5. ———: **Sale of Option: Consideration: Wager: Intention.** An option, or a privilege to buy, at a certain price, is a thing of value which will support a contract to pay for it; and the fact that one agrees to pay a certain sum for an option to buy corn for future delivery, he to lose such sum if he fails to buy is not a wagering contract. It does not show an intention not to buy.

6. ———: **Sales: Future Delivery: Merchantable.** In an ordinary sale of corn to be delivered it is implied that it will be merchantable, that is good quality and salable, though not necessarily the best.

7. ———: **Sales: Best Merchantable.** If a contract for sale of corn for future delivery calls for the "best merchantable corn," it means the best grade of corn usually dealt with in the markets of the country, as distinguished from the market in the immediate vicinity of the contract.

8. ———: **Options: Month of Delivery: Instructions.** In an action on a contract for the sale of corn to be delivered in the month of December, where the vendee has called for delivery on the 26th of that month, it is error to instruct that the average market price for the *whole* of that month would constitute the market price. It should have been restricted to the 26th and after.

Appeal from Moniteau Circuit Court.—*Hon. John G. Slate*, Judge.

AFFIRMED.

*F. J. Singley, J. B. Gallagher* and *S. C. Gill* for appellant.

*Roy D. Williams* and *Embry & Embry* for respondent.

ELLISON, P. J.—Plaintiff's action is for breach of contract for sale and delivery of a lot of corn. He had judgment in the trial court.

The contract was in writing reading as follows:
"Clarksburg, Mo. August 1, 1919.

"A. C. Yontz gives W. A. McVean eighty dollars for the privilege of eight thousand bu. corn for Dec. delivery at one Dollar & forty $1.40 per bushel to be delivered at Clarksburg or Tipton to be best merchantable corn.

"The eight (eighty) dollars being all Yontz can lose on Deal."

At the close of plaintiff's case defendant asked a peremptory instruction which the trial court refused. The instruction is based on the idea that the agreement, on its face, was a gambling contract and that if not on its face, it was shown to be of that character by the evidence.

In considering the question thus presented we must keep in mind that a valid contract of sale may be made for future delivery of grain even though the vendor has no grain on hand and will have to provide himself with the requisite quantity and quality before time of delivery. The thing which taints a sale for future acquisition and delivery is that there was never any intention to procure and deliver, or receive and pay for, thereby becoming a mere wager on the market price of the article at a given time. [Crawford v. Spencer, 92 Mo. 498; Scott v. Brown, 54 Mo. App. 606, 610; Connor v. Black, 119 Mo. 126, 142; Smith v. Bailey, 209 S. W. 945; Elmore Grain Co. v. Stonebraker, 214 S. W. 216.]

The contract in question is not wholly of the character we have just mentioned, since it does not contemplate absolutely that there is a sale, in that plaintiff, as vendee, does not agree to buy, nor defendant to sell unless plaintiff shall elect to buy at the time stipulated, viz., the month of December, 1919. In other words plaintiff paid eighty dollars for an option, to purchase the corn at $1.40 per bushel, become final and complete on his election to take it.

We have a statute (Sec. 4780, R. S. 1909) on the subject of option contracts. It reads that "All purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale, of . . . grain or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property or offering to buy the same does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. . . . "

An option means a privilege. [Illges v. Dester, 77 Georgia 36, 38.] It is called an unaccepted offer in McMillan v. Phila Co., 159 Pa. St. 142, 144; and in Hopwood v. McCausland, 120 Iowa, 218, 221, it is said to be but a right of election to exercise a privilege. It will be noticed that all option contracts for grain are not prohibited by this statute. In some States they are, but not so in ours. It is only such contracts that are made by parties who do not intend to receive and pay for the property bought, or deliver the property sold, that are void. The evidence clearly saves this case from the prohibition of the statute. Undoubtedly plaintiff intended to receive and pay for the corn. He gave defendant a written order to deliver and had arranged to procure the money to pay for it. And defendant had made an effort to purchase at least a part of the corn with which to deliver the quantity contracted. It is manifest from the sum of his testimony that he intended to deliver, but failed. He did not deny that he had made the effort. Indeed his chief excuse for failing

was that plaintiff did not give him long enough notice wherein he could deliver.

It will be noticed that the contract contains this statement: "The eight dollars being all Yontz can lose on the deal." It is manifest that the word *"eight,"* is merely a clerical error and that "eighty" was meant It being intended to provide that if plaintiff did not exercise his privilege of purchasing the corn he only lost the price he paid for such privilege. No particular point has been made on this, though plaintiff has suggested that it aids his contention that there was no intention by either party for a bona fide sale and shows the contract to be a mere wager and hence void under the statute. We do not think so. An option to purchase is a thing of value and a contract to pay for it is valid, even though it is never exercised. It does not show that no intention existed to receive and pay for the article. There is no element of a mere wager on the market with an intention not to purchase, but to settle with money on the state of the market, the purchaser to gain the amount of a rise and the seller to gain the amount of a decline.

It is true that if after making the contract, plaintiff for any cause concluded not to exercise his privilege of receiving the corn at the agreed price, he would only lose the sum he paid for the option. But there is nothing objectionable in that—nothing in it against the statute. It is no more than liquidated damages. It is said in Story v. Salamon, 71 N. Y. 420, a case like the present, in which there was no showing that one party had no intention to deliver, or that the other had no intention to receive, settlement to be had by one or the other paying the difference in the rise or fall of the market, the court said that "This contract purports to be based upon a valuable consideration. The plaintiff paid for the options given him. One may pay for an option to take at a future day, at a certain price, a farm, or any article of personal property. There is always uncertainty as to what the property will be worth at

the day named, and if it should then be worth less than the price named, he will not take it. In all this there is not necessarily a bet or wager, . . . Most contracts for the purchase or sale of merchandise at a future day, are made with a view to the market price on the day of performance. There is always an element of speculation and uncertainty as to that, and yet it has never been supposed that there is any betting by such contract. . . . We should not infer an illegal intent unless obliged to. Such a transaction, unless intended as a mere cover for a bet or wager on the future price of stock, is legitimate and condemned by no statute; and that it was so intened was not proved. If it had been shown that neither party intended to deliver or accept the shares, but merely to pay differences according to the rise or fall of the market, the contract would have been illegal." Further on the court said that, "We may guess the parties were speculating upon fluctuations in price, . . . But a contract which can have legal interpretation and effect should not be condemned, without any proof, in that way."

This phase of the case must be determined in plaintiff's favor, unless error was committed in the instructions on the subject.

Plaintiffs instruction No. 1, failed to hypothesise the question of intention of the parties, thereby, as we have seen, omitting the very life of the case. It is probable that this was not set out because it was not in dispute in the evidence; or that it was fully submitted in instruction No. 1 for defendant. But, under the rule in this State, defendant's instruction cannot supply matter which is a necessary element to make out a plaintiff's case. It required an intention in order to validate the contract. The duty laid upon plaintiff to show a valid contract. Hence, but for the consideration that it was not in dispute, the instruction would be erroneous. [Hall v. Coal & Coke Co., 260 Mo. 351, 369; State ex rel. v. Ellison, 272 Mo. 571, 584-587; Kerr v. Bush,

198 Mo. App. 607, 617; Pierson v. Lafferty, 197 Mo. App. 123, 131.]

The evidence discloses, without doubt or controversy that the intention existed, on defendant's part, to deliver the corn and on plaintiff's part to receive and pay for it. It was not a matter of dispute under the conceded facts which the face of the record discloses, that plaintiff ordered the delivery of the corn and that he prepared himself with the necessary money to pay for it. So it equally appears, as we have already said, that defendant endeavored to provide himself with the corn, failed in the effort and finally excused himself on the ground that plaintiff did not give him notice that he would receive it, in time for him to procure it. In such condition of case it was not reversible error to omit these conceded facts from the instruction. [Davidson v. Transit Co., 211 Mo. 320, 356-361.] In that case will be found a full review of the authorities. Besides this, there is a failure in the answer itself to plead that there was no intention to deliver, or to pay. A number of legal *conclusions* are stated as to what the parties were bound, or not bound to do, but nowhere is the fact of lack of intention pleaded.

The chief contest related to the market value of corn between the 26th and 31st of December, and this involved the meaning of the term, "best merchantable corn." As to the latter we think that the contract, being for corn not seen by the purchaser and for future delivery, if it had been silent as to the quality, it would have been implied that the corn should be merchantable, that is of good quality and salable, though not necessarily the best. [Benjamin on Sales, 7 Ed., 685, 686; Howard v. Hoey, 23 Wend, 350.] So we are of the opinion that the parties to this contract meant something definite when they stipulated for the *"best* merchantable" corn. They meant the best grade of corn generally or usually dealt with in the markets of the country. It would not do to confine the grade to that of the immediate vicinity, for it might be, and often is, that

on account of frost, drouth, etc., in certain localities, corn would be of such inferior quality as to rank low down in the general markets.

The court refused defendant's instruction No. 2, wherein the jury were confined to ascertaining the market price from sales of such corn at Tipton and Clarksburg during the whole month of December, and if there were no sales at those places, then from sales at the nearest market for such corn. The instruction was erroneous in including the whole month of December. It should have been for that part of the month beginning on the 26th. This was corrected in a modification by the court. The same may be said of defendant's refused instruction No. 3. But in the latter, in respect to the measure of damages, plaintiff was denied any damages unless the market was higher than $1.40 (the price plaintiff was to pay) at *Tipton or Clarksburg.* In No. 2, the jury were directed, in fixing the damages to consider the average market price of such corn at Tipton or Clarksburg, but if there were no sufficient sales of such quality at those places to make a market, then the damage should be determined by the average market price at the nearest market for such corn.

It will be noticed that this instruction directs that if there was no market price for such corn at Tipton or Clarksburg, then the price was to be ascertained from the nearest market for such corn. There was no evidence submitted showing there was a market for the corn called for by this contract, local to those towns, and the market price there was fixed by showing the price at St. Louis (a great grain market about 150 miles distant) and deducting therefrom ten or twelve cents per bushel. The instruction, as offered, was erroneous in submitting, without evidence, a hypothesis of a local market for such corn in those towns and in not naming St. Louis as the nearest market. It is true there was evidence showing the price of corn paid by some parties in or near those towns, but it was not the best merchant-

able corn. It was for corn unshelled, some unshucked and some not firm.

Defendant's fourth instruction was refused and we think rightly. It was on the subject of plaintiff giving defendant a reasonable time within the month of December in which to deliver the corn. Instead of stopping at the hypothesis that defendant must have had a reasonable time, it contains a further special direction as to the special facts which could be taken into consideration in coming to a conclusion. This was not proper. As it is drawn instruction is an indirect mode of submitting an argument in defendant's behalf on the subject of time.

Refused instruction No. 5, was without evidence to support it. There was nothing more than defendant's mere suspicion that plaintiff never intended to accept any corn and that he did not want defendant to deliver any, and the same may be said of instruction No. 6.

It is our duty under the statute to affirm the judgment unless there be some error materially affecting the merits of the cause. We do not think there is and hence conclude that it should be affirmed. All concur.