M. R. LIVELY, as Administrator of the Estate of H. M. ZIMMERMAN, MARK U. HENDRICKSON and ROBERT HENDRICKSON, Appellants, v. P. E. TABOR, WILLIAM LANDRETH and JOHN R. GRIGG.—107 S. W. (2d) 62.

Division One, June 30, 1937.

*R. H. Davis* for appellants.

*Grover C. James* for respondents.

356

HYDE, C.—This is a suit for $24,588 with interest at six per cent per annum from April 3, 1917, claimed to be due under a written contract. This action was begun on March 27, 1925. The trial court found that suit was barred by the five-year Statute of Limitations (Sec. 862, R. S. 1929), and entered judgment for defendants. Plaintiffs have appealed from the judgment.

The contract sued on was made November 20, 1915, and was entitled "Option Contract." The parties of the first part therein, H. M. Zimmerman and C. E. Elliott (both now deceased but hereinafter referred to as plaintiffs, although present plaintiffs are their successors in interest), agreed with the party of the second part, John R. Grigg, "in consideration of twenty-five dollars to them in hand paid . . . to sell and convey by good and sufficient instrument of conveyance to the party of the second part or his assigns" certain real estate in Jasper County "being about sixty-five acres more or less." Conveyance was to be made "on or before March 22, 1916, . . . *on condition that party of the second part pays, or causes to be paid* to parties of the first part, or their representatives on or before March 22, 1916, the sum of six hundred ($600.00) dollars, cash, per acre for each acre and a proportionate ratio of value for each fractional part of an acre of the above described premises, to be determined by a survey thereof to be made of said premises before March 22, 1916." There was also an option agreement for a mining lease covering this land.

The contract contained further provisions as follows:

"Party of the second part or his assigns to notify parties of the

first part, or their representatives, ten days before the 22nd day of March, 1916, of their purpose to complete the purchase *so that said survey may be made* and the amount of acreage determined prior to said date. . . . *The failure to perform* any of the conditions of this contract *by party of the second part,* or his assigns, within the time and in the manner herein provided, and to pay the sums of money at the times and in the manner herein provided, and to pay the sums of money at the time and in the manner provided, *shall end and determine the same and this contract shall become null and void* and of no force, and parties of the first part are hereby released from all liability and obligations under this contract, and time is of the essence of this agreement."

Renewals of this option contract extended the time until March 4, 1917. An account of previous litigation over this matter will be found in Grigg v. Lively, 214 Mo. App. 473, 257 S. W. 187. One renewal of the option contract provided (after $9500 was paid) that "parties of the first part hereby extend said option contract and option for lease made in connection with said option contract, in all parts and particulars, and being in no way modified, changed or amended, except as to the time of performance until on or before November 1, 1916, for the payment of the balance of the purchase money under said option contract, and the execution of said mining lease, and it is further agreed that any payment made under said contract is forfeited as liquidated damage if party of the second part fails to perform said contract within the time herein and hereby extended." Another renewal (after $6000 more was paid) provided that: "The time of performing the conditions and making the balance of the payment of the purchase price of said land as in said contract provided, is hereby extended in all of its terms and conditions for the payment of the balance of the purchase money, until on or before March 4, 1917." These renewals were signed only by plaintiffs. There was also a recital therein that "parties of the first part (in the option contract) have been unable to make title by reason of the death of H. M. Zimmerman." Mr. Lively signed them as administrator of the Zimmerman estate.

The trial court filed a written opinion and, since the allegations of the pleadings are material upon the question of the application of the Statute of Limitations, we take from the trial court's opinion the following statement, to-wit:

"In substance, the trial petition alleges that, on November 20, 1915, Zimmerman and Elliott owned the land in Jasper County described in said petition and, on that date, entered into a contract with John R. Grigg whereby said Zimmerman and Elliott agreed that, upon payment to them of $600.00 per acre, they would convey said land to said Grigg, his heirs and assigns on or before March

22, 1916. The acreage, which fixed the aggregate price to be paid by Grigg, was to be determined by a survey of the land. A copy of said option contract was attached to the trial petition as Exhibit 'A' and made a part thereof. It is further alleged that, on March 18, 1916, a thirty-day extension of said contract was agreed upon between C. E. Elliott, defendant Grigg and plaintiff Lively, as administrator of the estate of H. M. Zimmerman, who had died since the execution of the option contract. Said extension agreement is attached to the trial petition as Exhibit 'B' and made a part thereof. It is further alleged that, by Exhibit 'C', attached to said petition (which exhibit appears to bear no date), the contract of November 20, 1915, was extended to November 1, 1916, in consideration of the payment to C. E. Elliott and to plaintiff Lively, as administrator of the Zimmerman estate, of $9,000.00 (the exhibit recites that $9,500.00 was paid), and further provided that said option contract should continue in force and effect until title to the land 'can be passed.' It is further alleged that title could not be passed by November 1, 1916, and that, on December 12, 1916, defendants Tabor and Landreth paid said Elliott and plaintiff Lively, administrator, under said option contract of purchase of November 20, 1915, the further sum of $6,000.00 and, at that time, Elliott and plaintiff Lively, administrator, extended the time for performance and making payment of the balance due under said contract to March 4, 1917.

"It is then alleged that a survey showed that said land contained 65.98. This apparently fixed the purchase price at $39,588.00; and that upon ascertaining such price, Elliott and wife signed and executed a deed to defendant Grigg, conveying to him an undivided half interest in and to said land and said deed was delivered to the Bank of Oronogo to be delivered to defendants upon the payment of the balance of the purchase money and defendants were notified thereof. It is then alleged that said option contract was taken in the name of John R. Grigg for the use and benefit of defendants Tabor and Landreth, who were the parties actually in interest and who contracted for the purchase of said land under the option contract of November 20, 1915, and who paid the several sums of money paid thereunder; and that said defendants elected to take up said opinion contract and purchase said land absolutely by filing in the Probate Court of Jasper County, Missouri, on April 3, 1917, in the name of defendant Grigg, a petition asking that court to order and direct plaintiff Lively, as administrator of the Zimmerman estate, to execute a deed of conveyance of said land to said Grigg. This proceeding was later certified to the circuit court and finally dismissed. It is further alleged by an insert attached to said trial petition that certain named persons are all the heirs at law of H. M. Zimmerman,

deceased, who died intestate, and that Maria D. Elliott is the sole devise under the will of C. E. Elliott, deceased, and that all of said heirs at law of said Zimmerman, deceased, and said Maria D. Elliott have signed and acknowledged deeds conveying unto defendants Tabor and Landreth a good merchantable title to the land.'' (And have tendered these deeds and deposited them with the clerk of the court.)

The cause was dismissed as to defendant Grigg before trial. The answer of defendants Tabor and Landreth contained a general denial, a specific denial of the agency of Grigg to act for them, and a plea of laches based upon plaintiffs' refusal to convey when the land was valuable for mining purposes and failure to sue until long after it had become worthless. It also set up the Statute of Frauds and the five-year Statute of Limitations. Defendants offered no evidence and their separate demurrers to plaintiffs' evidence were sustained.

Plaintiffs' evidence showed that negotiations, prior to the execution of the option contract, were carried on by defendant Tabor; that Tabor assisted in preparing this contract stating he was acting for himself and associates; that it was made in the name of and signed by Grigg who was Tabor's brother-in-law; and that defendant Landreth furnished part of the money paid during the time the option, by renewals thereof, remained in force. Plaintiffs also had evidence that on May 3, 1916, a letter (signed John R. Grigg by F. Augter) was written to plaintiffs by Augter, a clerk in Tabor's office, requesting delivery of an abstract of title, and asking about plaintiffs' ''ability to deliver the property in the very near future;'' that on April 1, 1916, Tabor wrote Lively enclosing an attorney's opinion on the title, requesting him to ''clear these matters up,'' and directing him to ''make deed to W. H. Landreth, Trustee;'' and that on March 6, 1917, (the option was only extended to March 4, 1917) Grigg wrote Lively saying: ''I beg to advise you that I am prepared to pay the balance of the purchase money as soon as Messrs. Elliott and Zimmerman or you as their representative have complied with your part of the contract,'' and asking: ''When will you have the deed ready?'' It appears that defendants (or some of them) had made a deal to sell the property to another party who was ready to pay the money when he could get a satisfactory title. In April, 1917, suit for specific performance was commenced against Lively as administrator. This suit was never tried and was finally dismissed in 1921.

The theory of plaintiffs' petition was that Tabor and Landreth ''elected to take up said option contract and purchase said land absolutely by filing . . . a petition in the name of defendant Grigg . . . praying the court to order and direct plaintiff Lively, as administrator . . . to execute a deed of conveyance to defendant

Grigg." By requesting declarations of law so stating, plaintiffs sought to submit, as acts sufficient to convert the option contract into a contract of purchase binding defendants to pay the full sale price whenever title was tendered, both part payment of the purchase price and commencing suit for specific performance. Plaintiffs now suggest in their brief that "the letter from Grigg to Elliott and Zimmerman demanding compliance on their part with the terms and conditions of said option contract constituted an acceptance thereof, and defendants became bound and liable thereunder for the payment of the purchase money therein provided to be paid;" and further argue that the option contract itself "carries an implied promise to pay the purchase money upon the acceptance thereof by Grigg, acting for and on behalf of defendants," pointing to the provision for notice to plaintiffs, ten days before the end of the option period "of their purpose to complete the purchase."

Section 862, Revised Statutes 1929, bars, after five years from the accrual of the cause of action, "and actions upon contracts, obligations or liabilities, express or implied, except those mentioned in Section 861." The part of Section 861 relied upon is the provision allowing suits within ten years "upon any writing, whether sealed or unsealed, for the payment of money or property." To come within the ten-year statute, "it must appear . . . that the money sued for is promised to be paid by the language of the writing sued upon;" and "unless the payment of the money sued for was promised by the terms of the writing, either in express language or by language which is tantamount or equivalent to such promise," the ten-year statute does not apply. "If a promise to pay the money sued for does not arise from the language of the writing itself, but the obligation or liability of defendant therefor is one implied by law from the transaction or one that arises only from the proof of extrinsic facts," then the action is within the five-year statute. [Herweck v. Rhodes, 327 Mo. 29, 34 S. W. (2d) 32; Parker-Washington Co. v. Dennison, 267 Mo. 199, 183 S. W. 1041; Krebs v. Bezler, 338 Mo. 365, 89 S. W. (2d) 935; Quint v. Kingsbury (Mo. App.), 289 S. W. 667; Lehner v. Roth, 211 Mo. App. 1, 227 S. W. 833; Id., 295 Mo. 174, 243 S. W. 91; Quattrochi v. Farmers' & Merchants' Bank, 89 Mo. App. 500.]

What writing is there in this case, in which any promise to pay money was made, by defendants or either of them? The option contract does not contain any express promise to pay anything; nor is there any language from which a promise to pay can reasonably be implied. On the contrary, it clearly expresses the intention to give the party of the second part his choice either to pay or not pay. Acceptance of an option is usually intended to be made by performance by the optionee. This contract clearly meant that no

one had any further rights under it unless there was acceptance by full performance or valid tender thereof. The purpose of an option contract for land is to bind the landowner for a valuable consideration not to withdraw a specified offer for the sale thereof during a fixed period, so that he is bound "to convey his land to another upon condition that such other shall, within a specified time, accept his offer and comply with the terms proposed." The principle of law upon which an option contract is based "is that the bond or conditional covenant to convey upon the option of the lessee or vendee is a continuing offer on the part of the vendor or owner, until accepted within the time and upon the terms limited in the option and when accepted it becomes a valid agreement supported by mutual promises of competent parties." [Warren v. Castello, 109 Mo. 338, 19 S. W. 29; Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480; Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d) 571; American Law Institute's Restatement of Contracts, secs. 24, 36 and 47.] The optionee does not ordinarily promise in the option contract (and did not in this one) to pay anything. He gives consideration only to make a continuing offer irrevocable during the option period. "An option means a privilege, . . . a right of election to exercise a privilege." [Yontze v. Mc-Vean (Mo. App.), 217 S. W. 1000.] It requires something more than the option contract to find the optionee's promise to buy or to pay. Therefore, his promise must be based on evidence *aliunde* so far as the option contract is concerned. If his acceptance should be made in writing then, of course, the two writings (the option contract and the written acceptance) could constitute a "writing for the payment of money" which would be within the terms of the ten-year statute, provided such written acceptance was a promise to pay, and was accepted by the optioner in lieu of full performance. (Quere: What bound plaintiffs to sell if defendants failed to pay or tender payment prior to the expiration of the option period?) "Neither party is bound unless both are bound." [Gillen v. Bayfield, supra.]

Concerning the effect of commencing suit for specific performance, which was the act mainly relied upon by plaintiffs as establishing a promise to pay the full purchase price, we adopt the trial court's view, as follows:

"Plaintiffs contend that the filing of the proceeding in the probate court for specific performance in the name of Grigg, but in fact for defendants Tabor and Landreth, constituted a binding promise to pay for the land. Grant that for the purposes of the argument, but such act was one outside the terms of the writing and it requires evidence *aliunde* to prove such a contract. The necessity for such proof clearly stamps the option contract as one not coming within the provisions of Section 861. . . . Under plaintiffs' own theory,

the liability of Grigg to take and pay for the land did not arise and become fixed until Grigg elected to enforce the contract by filing in the probate court the proceeding to enforce the contract specifically. If proof of such proceeding is not evidence *aliunde* the writing sued on, it is difficult to conceive what facts would be outside of the writing.''

Nor can we sustain plaintiffs' claim that the part payments and the letters requesting performance amounted to final acceptance of the offer to sell made by the option contract. Plaintiffs in making extensions of the option period could have required a written promise to pay the full purchase price as consideration therefor and thus converted the option contract into a contract of sale which would have bound both parties; but they did not do so. Evidently they preferred to be released by the optionees' failure to pay, and if this would release the optionor it would certainly also release the optionee. The renewals were not signed by any defendant and there would have been no such promise if they had been signed by them, because they contained no promise to pay anything. They merely acknowledged payments; provided that these should be forfeited to and retained by plaintiffs if the option contract was not completed; continued the option contract as originally made except as to time; and showed they were partly for the benefit of plaintiffs because they were not then able to convey the title. The letters from Grigg, even if they could bind Tabor and Landreth, contained no promise to pay the full purchase price. They merely indicated readiness to make acceptance by performance. The same thing is true of the provision in the contract requiring notification by the optionee ''ten days before the 22nd day of March, 1916, of their purpose to complete the purchase.'' The contract itself states the purpose of this notification to be ''so that said survey may be made and the amount of acreage determined prior to said date.'' This would fix the amount to be paid but the optionee, after giving notice, still had his choice to pay on that date and take the land, or not pay and thereby cause the option contract to ''become null and void'' and thus lose his right to ever get a conveyance (and after the renewals to lose his part payments), at least unless he made a definite promise therein. The weakness of plaintiffs' contention is that they can point to no specific promise anywhere, but rely on several separate acts as constituting a promise by implication. If there was a writing in which there was a promise to pay the full amount (as the ten-year statute requires), it would not be necessary to point to anything else.

Even if a promise to pay could be implied from some of these extrinsic acts, such a promise would be based on evidence *aliunde* so far as any writing in evidence is concerned. ''Parol acceptance of an offer in writing does not give rise to an agreement or contract

in writing, within the meaning of statutes relating to limitations governing actions on contracts in writing.'' (37 C. J. 758, sec. 86); and here there is not even evidence of any express verbal promise binding any defendant to complete the option and pay the entire purchase price. Plaintiffs certainly do not have any written acceptance of the option contract by defendants Tabor and Landreth (who are the only defendants now in the case), or any writing containing a promise of any kind signed by either of them. Certainly evidence *aliunde* is required to show any promise, express or implied, by them or either of them to pay anything. [See Carter v. Burns, 332 Mo. 1128, 61 S. W. (2d) 933.] About the only writings, not signed by the party (in person or by authorized agent) against whom enforcement is sought, which are held to be within the ten-year statute, are covenants in deeds or agreements therein for assumption of mortgages; but acceptance of delivery of such an instrument and taking possession of the land thereunder as grantee takes the place of execution. [37 C. J. 754, sec. 82; 17 R. C. L. 725, sec. 84, also sec. 90.] Even so, promises *implied from acceptance of deeds* are held to be within the five-year statute. [See Trickle v. Snyder (Wis.), 259 N. W. 264, 97 A. L. R. 989; 17 R. C. L. 729, sec. 90.]

In every case held to be within the ten-year statute, cited by plaintiffs, there was a writing signed by the defendants containing language in which a promise to pay money could be found. A promise herein must be implied from acts done by parties who can only be connected with the transaction by oral testimony. ''Periods of limitations are graduated mainly with reference to the nature and quality of the evidence by which the contract sued upon must be established.'' [37 C. J. 748, sec. 68.] The principles for construction of our statutes are that if language, which can be construed as a promise to pay money, on the part of the party from whom it is sought to collect it, can be found in a writing to which he is a party, suit to enforce his promise may be brought within ten years; if his promise must be shown by oral evidence *aliunde,* or implied from extrinsic facts, suit thereon must be brought within five years. Clearly any action by plaintiffs against defendants on any verbal acceptance of the option contract, or on any promise which might be implied from acts done by them, was barred; and no writing, in which they made a promise to pay the full purchase price required by the option contract, was shown.

The judgment is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.