**CIVIC PLAZA NATIONAL BANK,**
Appellant,

v.

**FIRST NATIONAL BANK IN DALLAS,**
Appellee.

No. 19101.

United States Court of Appeals
Eighth Circuit.

Oct. 7, 1968.

Rehearing Denied Nov. 4, 1968.

**194**

Robert L. Sweney, of Bryan, Cave, Mc-Pheeters & McRoberts, St. Louis, Mo., for appellant, Thomas C. Walsh, St. Louis, Mo., and Bernard D. Craig, of Levy & Craig, Kansas City, Mo., were on the briefs.

James F. Duncan, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellee, Russell W. Baker, Kansas City, Mo., was on the brief.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge, and REGISTER, Chief District Judge.

REGISTER, Chief District Judge.

First National Bank in Dallas, the appellee here, brought this action seeking damages for breach of an alleged contract. Upon stipulated facts and evidence adduced at a trial to the court without a jury, judgment was entered in favor of the appellee and against the appellant, Civic Plaza National Bank. Jurisdiction is established by diversity of citizenship of the parties and the requisite amount in controversy.

The facts we deem pertinent and essential to an understanding of the issues involved and our discussion thereof are as follows: Two individuals, hereinafter referred to as "borrowers," sought a $100,-000 loan from appellee, from whom they had previously borrowed large sums of money. Borrowers were advised by appellee that, as a condition to its making this requested additional loan, it would require what is known in banking circles as a "pick-up" or "note purchase commitment" letter. Borrowers thereupon sought from appellant such letter. Following certain preliminary negotiations between officers of the parties involved, appellant issued and mailed to appellee in Dallas, Texas its commitment letter in the following form:

June 25, 1964

First National Bank in Dallas,
1401 Main Street
Dallas, Texas 75202
Attention: Mr. John M. Gray
Senior Vice President

Gentlemen:

The undersigned Bank, hereinafter called 'Purchaser,' requests First National Bank in Dallas (Bank) to lend the sum of $100,000.00, jointly and severally, to Byron E. Prugh and Floyd L. Shelman (Borrowers), of Kansas City, State of Missouri, the indebtedness thereby created to be evidenced by a promissory note (Note) executed by Borrowers in principal amount of $100,000.00, dated June 10, 1964, payable to Bank, or order, at its office in Dallas, Texas, bearing interest at the rate of 6% per annum from the date of the Note until its maturity and at the rate of 8% per annum from such maturity until paid, the principal and interest being due and payable quarterly. To secure payment of such indebtedness Borrowers will execute and deliver to Bank certificates evidencing 15,000 shares of the capital stock of Home Fidelity Life Insurance Company of Kansas City, Missouri, with stock powers duly executed attached thereto together with a collateral pledge agreement on the Bank's usual form executed by Borrowers, the lien created by such pledge of the shares of stock to secure the indebtedness evidenced by the Note.

To induce Bank to make the loan to be evidenced by the Note, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser hereby agrees to purchase the Note, without notice or demand, which are hereby waived, from Bank at Bank's office in Dallas County, Texas, during Bank's usual banking hours on the 10th day of June, 1965 (Purchase Date) or within 30 days thereafter, by delivering to Bank, as the purchase price therefor, an amount in Dallas funds equal to the aggregate of the balance of principal and accrued interest remaining unpaid on the Note on the Purchase Date. Upon delivery of said purchase price, Bank will (i) endorse the Note without recourse on Bank and without representations or warranties of any kind or character, express or implied (ii) execute a written assignment to the Purchaser, without representations or warranties of any kind or character, express or implied, of all right, title and interest of Bank in and to the certificates of stock, stock powers, collateral pledge agreement, and the lien created thereby and, (iii) deliver to the Purchaser the Note, certificates of stock with stock powers attached, collateral pledge agreement and the assignment thereof.

The obligation of the Purchaser to purchase the Note in accordance with the terms hereof is absolute and unconditional and shall be enforceable by Bank on the Purchase Date, or at any time thereafter, notwithstanding the occurrence at any time of any default by Borrowers nor of any breach by Borrowers of any terms or conditions of the Note or collateral pledge agreement or any other agreement in connection herewith.

This agreement between the Purchaser and Bank shall be binding upon the Purchaser and its successors, and shall inure to the benefit of Bank, and its successors and assigns.

If the foregoing constitutes your understanding of our agreement, please execute and return to us the enclosed copy hereof.

Very truly yours,
Civic Plaza National Bank
(Purchaser)
By /s/ Charles A. Truitt,
President."

Borrowers had previously, on June 10, 1964, executed a one hundred thousand dollar note payable to appellee, due June 10, 1965, and bearing 6% interest. An "accepted" copy of the commitment letter was forwarded by appellee to appellant and on July 3, 1964—borrowers having furnished the requisite collateral—disbursement of the loan was made.

No payments on the loan were made and after maturity the note and collateral, with sight draft in the sum of $105,225.00 (principal plus interest from July 3, 1964 to June 10, 1965) attached, were forwarded by appellee and presented to appellant for payment on June 24, 1965. Appellant refused to pay and this lawsuit resulted.

Appellant raised several defenses in the trial court and on this appeal; however, because we determine it to be dispositive of the matter, we consider only one.

Appellant urges that there is a fatal variance between the terms of its commitment letter and the note executed by borrowers in that the letter provides that "the principal and interest be(ing) due and payable quarterly" but that the note contained no such provision and provided only for a maturity date of June 10, 1965. The trial court concluded that "The term 'payable quarterly' with no maturity date (the commitment letter made no reference to a maturity date) is ambiguous; it could be payable quarterly over a period of one or twenty years; the quarterly installments could be equal or unequal; and there was no provision for automatic or optional acceleration of the balance in case of default in a quarterly payment." That court further found that "In this case the words 'payable quarterly' in the pickup letter are so ambiguous that no legal

meaning can be attached to them. For that reason, under all the circumstances in this case, the failure of the plaintiff (appellee) to insert the same meaningless words in the guaranteed note does not amount to such a variance as to discharge the defendant (appellant)."

We disagree.

Basically, this case involves the interpretation or construction of a written contract, and a brief analysis of that contract is in order. Initially, it was a written revocable offer to purchase a specifically described note on June 10, 1965, or within thirty days thereafter, in accordance with the terms of said offer. Ott v. Home Savings & Loan Association, 265 F.2d 643 (9 Cir. 1958). One of the expressed requirements of the note referred to or characterized in said offer was that "the principal and interest be(ing) due and payable quarterly." This offer became irrevocable when the appellee disbursed the $100,000 loan to the borrowers. At that time the note representing that amount, secured by the specified collateral, became the property of the appellee which could have, had it desired, retained ownership since it was under no legal duty or obligation to sell, assign or transfer it at any time to the appellant. However, as the option was to become effective on June 10, 1965 and remain effective for 30 days thereafter, the appellant had the "absolute and unconditional" obligation to purchase the described note, if it were tendered to it by the appellee during the effective time period.

■ We agree with appellant's contention that, by the making of the loan and disbursing of the money to the borrowers by appellee, the commitment letter became an irrevocable offer for a unilateral contract. The offer was in the nature of an option. The appellee then had the option or choice of alternatives—it could have rejected the offer by retaining ownership of the note, or it could have accepted the offer by tendering the conforming note to appellant in accordance with the terms of the commitment letter. Its option or freedom of

choice remained effective until the expiration of 30 days following June 10, 1965. However, in the event of the tender of the note by appellee to appellant, the latter's obligation to purchase in accordance with the terms of the commitment letter was "absolute and unconditional." Corbin on Contracts, Vol. 1A, § 260, p. 466. The fact that appellant did not receive any consideration for the offer is not material—the appellee took action in reliance thereon by granting the loan. See: Moench v. Hower, 137 Iowa 621, 115 N.W. 229 (Ia.1908); 17 Am.Jur.2d, Contracts, § 12; and Corbin on Contracts, Vol. 1A, § 263, pp. 504–5.

Appellant contends that the note tendered by appellee did not conform to the requirements of the note described in the commitment letter, but varied in certain material respects including, *inter alia*, "failure to require quarterly payments of either principal or interest," and hence the appellant was not obliged to purchase the tendered note.

Appellee contends, and the trial court held, that the word "quarterly" in the commitment letter was meaningless, and that the omission thereof in the promissory note was immaterial and not a fatal variance.

"In diversity cases it is our duty to apply state law as determined by state appellate courts." Hawkeye-Security Insurance Company v. Davis, 277 F.2d 765, 769 (8 Cir. 1960).

"It is the duty of the federal appellate courts, as well as the trial court, to ascertain and apply the state law where, as in this case, it controls decision." Huddleston et al. v. Dwyer et al., 322 U.S. 232, 236, 64 S.Ct. 1015, 1018, 88 L.Ed. 1246.

■ We are satisfied that the law of Texas is applicable and controlling.

"A contract is regarded as having been executed where the last act necessary to make it a legal obligation has been and, under the terms of the instrument, was entitled to be done." D'Oench, Duhme & Co., Inc. v. FDIC, 117 F.2d 491, 492 (8 Cir. 1941).

"In the case of an informal unilateral contract, the place of contracting is where the event takes place which makes the promise binding." Restatement, Conflict of Laws, § 323. Also see: Restatement, Conflict of Laws, § 324; and Pasquel v. Owen, 186 F.2d 263, 272 (8 Cir. 1950).

In this case the revocable offer was forwarded and delivered to the appellee in Texas; the consummation of the loan (which was the event that had the effect of transforming such revocable offer into absolutely and unconditionally binding the appellant to comply with the terms thereof) occurred in Texas; and the purchase of the note by appellant was, under the terms of the offer, to occur in Texas. Notwithstanding our determination that Texas law is controlling, we note that the law of Texas and Missouri, both as to the interpretation and construction of the pertinent document and the issue of obligation on the part of the appellant is similar and leads to the same conclusion.

■ Under Texas law an option is a unilateral contract which does not ripen into a mutually binding obligation until acceptance by the optionee. The Texas Court of Civil Appeals in Hankey et al. v. Employer's Casualty Co. et al., 176 S.W.2d 357, at page 362 (1943), stated:

"An option is a mere offer which binds the optionee to nothing and which he may or may not accept at his election, within the time specified. Until so accepted it is not, in legal effect, a completed contract, but when accepted * * * it becomes a completed contract, binding on both parties."

And in Leggio v. Millers National Insurance Company et al., 398 S.W.2d 607, at page 610 (1965), that same court said:

"In 13 Tex.Jur.2d, page 161–2, Sec. 37, it is said: 'An option is merely an offer that binds the optionee or holder of the option to do nothing; he may or may not accept the offer, as he chooses, within the time specified. Until it is accepted, an option is not,

in legal effect, a completed contract. However, when accepted within the time limited and in the manner specified, and option becomes a completed contract that is binding on both parties.'"

The Supreme Court of Missouri, in Lusco v. Tavitian, 296 S.W.2d 14, at page 16 (1956), said:

"An option is unilateral and does not ripen into a contract of purchase and sale until exercised by the optionee. Until the optionee accepts there is no enforceable contract, the option being in effect but an offer on the part of the optionor, although an offer binding on the optionor by virtue of the consideration paid for the option until the time stipulated for the acceptance of the offer has expired."

■ Likewise, the law in both states is in accord with the general rule that an acceptance of an offer must conform exactly to the terms of the offer in order to create a binding contract. The Texas court in *Leggio*, supra, quoted with approval from one of its earlier decisions, Vratis v. Baxter, 315 S.W.2d 331, 337, as follows:

"The acceptance of an option, to be effectual, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms or conditions of the option. Substantial compliance with the terms of the option is held not sufficient to constitute an acceptance; to be effectual, the acceptance must be identical with the offer, or, at least, there must be no substantial variation between them. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither."

And in Lambert v. Taylor Telephone Cooperative, 276 S.W.2d 929, at page 932 (1955), a case involving an option contract in which the critical issue was whether the purported acceptance had constituted a material variation of the

terms of the offer, the same Texas court stated:

"It is well settled that an acceptance of an option must strictly comply with the option contract and an attempted acceptance which modifies any of its terms is no acceptance. (Citations.)"

Concerning additional Texas authority on this point, also see: McWhirter v. Morrow, 203 S.W.2d 317, 319 (Tex.Civ.App. 1947), and Creson v. Christie et al., 328 S.W.2d 772, 778 (Tex.Civ.App.1959).

In Chapman v. Breeze et al., 355 Mo. 873, 198 S.W.2d 717 (1946), the Supreme Court of Missouri cited with approval Suhre v. Busch et al., 343 Mo. 170, 120 S.W.2d 47 (Mo.1938), which was an action for specific performance of an agreement granting the right to repurchase certain shares of corporate stock. The Court in *Suhre*, at page 54, stated:

"The next question is: What was plaintiff required to do to accept these continuing irrevocable (during the time specified) offers? * * * It is fundamental, of course, that acceptance must be in accordance with the terms of the offer and cannot be made in some manner contrary to the method provided."

The same Missouri court said in Thacker et al. v. Massman Construction Company, 247 S.W.2d 623, at page 629 (1952):

"To make a contract there must be both a definite offer and an unequivocal acceptance."

For further Missouri law on this point, see: Daggett et al. v. Kansas City Structural Steel Company et al., 334 Mo. 207, 65 S.W.2d 1036, 1039 (1937), and Lively et al. v. Tabor et al., 341 Mo. 352, 107 S.W.2d 62, 66, 111 A.L.R. 976 (1937).

The Missouri and Texas law above referred to is in accord with the well established general principles expressed by Professor Williston in the following language:

"When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option. When the acceptance is so made the optionor becomes bound. Nothing less will suffice unless the optionor waives one or more of the terms of the option." 1 Williston on Contracts, 3rd Ed., Sec. 61D, p. 206.

In United States v. Braunstein et al., 75 F.Supp. 137, p. 139, the court stated:

"The basic principles of law involved here are simple. To create a contract, an acceptance must be 'unequivocal,' Restatement, Contracts § 58 (1932), 'positive and unambiguous,' 1 Williston, Contracts § 72, Rev.Ed.1936, and 'must comply exactly with the requirements of the offer.' Restatement, Contracts § 59 (1932); Iselin v. United States, 271 U.S. 136, 46 S.Ct. 458, 70 L.Ed. 872 (1926). A reply to an offer that fails to comply with these requirements is a rejection. 1 Williston, Contracts § 73, Rev.Ed.1936."

Also see: United States v. T. W. Corder, Inc., 208 F.2d 411 (9 Cir. 1953); and 17 C.J.S. Contracts § 42, p. 674, and § 43, p. 680.

It is clear, therefore, that under applicable law the appellee had an option to fix the liability of the appellant by exercising it, but unless it did exercise that option by doing the act therein specified, i. e., tendering the note bearing the characteristics and terms outlined in the committment letter, within the time and manner specified in the offer, no liability came into being, and no action can be maintained. The creation of liability on the part of the appellant was conditional upon the strict performance by the appellee of a stated condition.

We point out that this is an action for breach of contract. It is not a suit for reformation of the document involved. It is not an action in which this court, as a court of equity, may apply equitable principles. The doctrine of substantial performance is wholly inapplicable. Pasquel v. Owen, 186 F.2d 263, 269 (8 Cir. 1950); Kauffman v. Raeder et al., 108 F. 171, 181–182 (8 Cir. 1901). The critical question before us is not whether there was substantial performance of a contact, but whether there was an

acceptance of an option contract by compliance with the terms thereof.

█ The commitment letter required that the promissory note be dated June 10, 1964 and that, as one of the terms of the note, it provide that the principal and interest be due and payable quarterly. An "accepted" copy of this commitment letter was forwarded by appellee to appellant, with an accompanying letter in which appellee stated that the loan had been made "under the terms and conditions outlined in your commitment letter of June 25, 1964." However, the note omitted the provision as to the quarterly payment of principal and interest. Appellant did not see the note until it was tendered for payment and had no knowledge of the omission of this term until June 14, 1965. It is our opinion that there was no acceptance of the offer contained in the commitment letter.

We are in agreement with the appellee's contention and the trial court's holding that the provision concerning quarterly payments is ambiguous. It does not state how much principal, or how much interest, was due and payable at the end of any particular "quarter." However, we are satisfied that it did have some meaning and cannot be ignored. Mr. Gray, the Senior Vice-President of the appellee bank, and the officer who represented it in the negotiations here involved, testified that the word "quarterly" does have a specific significance in banking circles, and that it means "a three-months period." This is in accord with the usual, normal and well-understood meaning of the term. 74 C.J.S., p. 1; 35A Words & Phrases, Perm.Ed., p. 424; and Black's Law Dictionary, 4th Ed., p. 1410. According to Webster's Third International Dictionary, page 1860, the word "quarterly" is defined to mean "computed for or payable at three-month intervals * * * recurring, issued or spaced at three-month intervals." Under such a broad and indefinite provision, any quarterly payment on account of the principal and any quarterly payment on account of the interest which

had accumulated would have satisfied the requirement. If at the time the commitment letter was received by appellee, this specified term or condition of the note was considered by the appellee to be ambiguous, it should have been returned or promptly clarified by other means.

"It is essential that an offer be certain and unambiguous since the acceptance is required to be identical with the offer and without certainty in the offer there is no meeting of the minds and no agreement. Therefore, if the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement.'" Morrow v. De Vitt et al., 160 S.W.2d 977, 983 (Tex.Civ. App.1942).

Also see: Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962); National Furniture Manufacturing Company v. Center Plywood Co., 405 S.W.2d 115 (Tex.Civ. App.1966); and 17 C.J.S. Contracts § 36 (2), p. 647.

A provision for time of payment of principal and interest as provided in a promissory note is obviously material—in fact, such a provision is an essential to negotiability. The Uniform Negotiable Instruments Act, which was in effect in both Texas and Missouri during the times here involved (see Vernon's Ann. Tex.Civ.Stat.1948, Art. 5932, Sec. 1, and Mo.Rev.Stat.1959, § 401.001, V.A.M.S.) requires that an instrument, to be negotiable, contain a provision that a sum certain must be payable on demand or at a fixed or determinable future time.

We are convinced, from our study of the applicable law, that the omission from the promissory note of the quarterly payment provision, which was one of the terms set forth in the commitment letter, was a substantial and fatal variance and that, in this case, there was no effective acceptance by the appellee of the then existing irrevocable offer on the part of the appellant. Accordingly, we hold that no contract was consummated and there

is no basis upon which a breach of contract action can be supported.

Under the accepted standards, the findings of the trial court are to be considered presumptively correct and are not to be disturbed on appeal unless clearly erroneous. Barber-Greene Co. v. Bruning Co., 357 F.2d 31, 36 (8 Cir. 1966), quoted with approval by this court in St. Louis Testing Laboratories, Inc. v. Mississippi Valley Structural Steel Company, 375 F.2d 565, 566 (8 Cir. 1967). However, the trial court's conclusion that the words "payable quarterly" "* * * are so ambiguous that no legal meaning can be attached to them," and that "* * * the failure of the plaintiff (appellee) to insert the same meaningless words in the guaranteed note does not amount to such a variance as to discharge the defendant (appellant)," of course, involves the interpretation of the instrument and, "The interpretation and construction of written contracts are matters of law within the competence of Courts of Appeal to review." Standard Title Insurance Company v. United Pacific Insurance Company, 364 F.2d 287, 289 (8 Cir. 1966).

The judgment appealed from is reversed.